UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


ELVIS JOHNSON,                          )
                                        )
              Plaintiff,                )
                                        )          CIVIL ACTION NO.
VS.                                     )
                                        )          3:04-CV-0111-G
CENTER OPERATING COMPANY,               )
L.P.,                                   )
                                        )
              Defendant.                )


MEMORANDUM OPINION AND ORDER


        Before the court is the motion of the defendant Center Operating Company,

L.P. ("COC") for summary judgment.  For the following reasons, the motion is

granted.

I.  BACKGROUND

        Plaintiff Elvis Johnson ("Johnson") is a resident of Texas.  *See* Plaintiff's

Original Complaint ("Complaint") ¶ 3.  He is African-American and was born on

February 22, 1957.  *Id*. ¶ 6; Deposition of Elvis Johnson ("Johnson Deposition"),

*attached to* Appendix in Support of Defendant's Motion for Summary Judgment

("Appendix") as Tab 1 at 3.

COC, a limited partnership between the ownership of the Dallas Stars professional hockey team and the Dallas Mavericks professional basketball team, operates Reunion Arena and the American Airlines Center in Dallas, Texas.  Center Operating Company's Brief in Support of its Motion for Summary Judgment ("Motion") at 2 n.4.  COC is authorized to do business in the State of Texas.  Complaint ¶ 4.

On November 7, 1998, Johnson began working at Reunion Arena as a part-time set up and change over employee.  *See* Personnel Hire Notice, *attached to* Appendix as Tab 4.  COC took over operations at Reunion Arena in 2000 and hired Johnson as a part-time set up employee.  Motion at 2.  The set up crew set up and broke down chairs, floors, walls, and glass for different events at the arena.  Plaintiff's Brief in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment ("Response") at 1.  On July 18, 2000, Johnson acknowledged his receipt of the COC employee policy manual.  *See* Acknowledgment and Receipt of Employee Policy Manual, *attached to* Appendix as Tab 2.

On October 2, 2000, Johnson submitted to a drug screening and tested positive for marijuana.  *See* Pharmchem Laboratory Report, *attached to* Appendix as Tab 8.  In a letter dated October 11, 2000, COC operations manager Dave Westby suspended Johnson for one week without pay due to the failed drug test.  *See* Letter

Dated October 11, 2000, *attached to* Appendix as Tab 9; *see also* Personnel Action Notice, *attached to* Appendix as Tab 3.

On July 30, 2002, Reunion Arena events manager Dana Intihar called Robert Jordan ("Jordan"), Johnson's supervisor, to view a security videotape.  *See* Affidavit of Robert Jordan ("Jordan Affidavit"), *attached to* Appendix as Tab 17 at 57.[1]  The following is Jordan's description of the contents of that videotape.

> In the tape, I saw Sam Davis, Changeover Supervisor, ("Davis") and Elvis Johnson, Changeover crew, ("Johnson") arriving together in the company pick up at the Reunion Arena loading docks.  As we viewed the tape I observed Davis and Johnson entering the arena through the loading docks door and proceeding past the security guard station and exiting past the camera viewing area.  In the next moment the tape showed Johnson at a pallet of boxes.  The boxes contained Dallas Sidekicks t-shirts that were designated as promotional giveaways for a Sidekicks soccer game that was to be held at Reunion Arena.
>
> After a short period of time, the video shows the security guard leaving his post and entering the arena.  Almost immediately after the security guard leaves, the tape showed Johnson appearing within camera view.  Johnson is then observed picking up a box from the pallet and handing it to Davis who leaves the arena with the box and places the box in the back of the (white) company truck.  After putting the box in the pick up, Davis returns to the arena.
>
> Davis is observed waiting at the dock door since it locked behind him as he exited the arena.  After the security guards return to the security post, Davis reenters the arena

---

[1]    COC filed a copy of that videotape with the court.  *See* Vidoetape, *attached to* Appendix as Exhibit C.

> and walks beyond the camera's view.  Shortly after the box
> is placed in back of the truck, Davis and Johnson are
> observed leaving the arena, getting in the pick up and
> driving away.

*Id*. at 58.

After viewing the videotape, Jordan transferred that videotape to Colette Vallot ("Vallot"), human resources director for the American Airlines Center.  *Id*.  Vallot confirmed with the Sidekicks organization that Sidekicks t-shirts were missing.  *Id*. at 59.  Jordan and Vallot subsequently interviewed Johnson and his coworker Sam Davis.  *Id*. at 58-59.  Upon questioning, Johnson denied any knowledge of missing t-shirts.  *Id*. at 59.  He claimed that he only took a box of tools out of the arena.  *Id*.

Johnson maintains that on July 30, 2002, he accompanied Davis to Reunion Arena.  Response at 2.  While at the arena, Davis asked Johnson to hand him a box. *Id*.  Johnson contends that he did not know what was inside the box.  *Id*.  Davis and Johnson then drove the American Airlines Center.  *Id.*  Davis pulled up to the back dock of the American Airlines Arena, and Johnson exited the truck.  *Id*.

In a letter dated August 2, 2002 to Johnson, Vallot terminated Johnson's employment.  *See* Letter Dated August 7, 2002, *attached to* Appendix as Tab 11.  The letter stated, in pertinent part:

> On Monday, August 5, 2002, you were suspended from
> work pending the outcome of our investigation into the
> unauthorized taking of a box of t-shirts belonging to the
> Sidekicks.  We have concluded the investigation and
> determined that your employment at Arena Operating

- 4 -

Company is hereby terminated for violation of company
policy, effective today.

*Id.*; *see also* Personnel Action Notice, *attached to* Appendix as Tab 10.

Jordan maintains that his decision to terminate Johnson's employment "was based

solely upon evidence of wrongdoing (theft), and had nothing to do with his race or

his age." Jordan Affidavit at 60. Johnson was 45-years-old at the time of the

termination of his employment. Response at 2.

On December 13, 2002, Johnson filed a charge of discrimination with the

Equal Employment Opportunity Commission ("EEOC"). *See* Charge of

Discrimination, *attached to* Appendix as Tab 12. On October 24, 2003, the EEOC

issued to Johnson a Notice of Right to Sue. Complaint ¶ 5.

Johnson filed this case on January 21, 2004. His complaint alleges the

following causes of action: discrimination on the basis of race, in violation of Title

VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*;

retaliation, hostile work environment, and failure to promote,[2] in violation of Title

---

[2] While Johnson did not specifically plead a cause of action for failure to promote, *see generally* Complaint, the court will analyze such a claim out of an abundance of caution. *See* Response at 15 ("Johnson was more qualified to perform the functions of supervisor than Gerald Atkins, who was promoted to supervisor instead of Johnson and was younger and clearly less qualified than Johnson."). The defendant interprets Johnson's pleadings as stating claims under Title VII for race discrimination, retaliation, and harassment and under the ADEA for age discrimination. *See generally* Motion. The court will address each such claim in turn.

VII; and discrimination on the basis of age in violation of the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*  Complaint ¶ 6.

Johnson maintains that Jordan treated black employees differently than white

employees by not offering black employees comparable full time employment and

benefits.  Response at 5.  Johnson further alleges younger, white employees were

given positions in setup that Johnson was qualified for.  *Id*.  Additionally, Johnson

avers that Jordan once stated that "all blacks have sold something in their lifetime."

*Id*.

## II.  ANALYSIS

### A.  Evidentiary Burdens on Motion for Summary Judgment

Summary judgment is proper when the pleadings and evidence on file show

that no genuine issue exists as to any material fact and that the moving party is

entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).[3]  "[T]he substantive

law will identify which facts are material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party."  *Id*.  The movant

makes such a showing by informing the court of the basis of its motion and by

---

[3]      The disposition of a case through summary judgment "reinforces the
purpose of the Rules, to achieve the just, speedy, and inexpensive determination of
actions, and, when appropriate, affords a merciful end to litigation that would
otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190,
1197 (5th Cir. 1986).

identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

Once the movant makes this showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the

motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

## B. Title VII Claims

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, prohibits discrimination on the basis of race, color, religion, sex, or national origin in federal and private employment. *Fitzgerald v. Secretary, United States Department of Veterans Affairs*, 121 F.3d 203, 206 (5th Cir. 1997). Title VII also prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

### 1. *Race Discrimination*

This court applies the burden shifting framework utilized by the Supreme Court in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792 (1973), to analyze Johnson's claims of race discrimination in employment. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

Since the record in this case contains no direct evidence of race discrimination,[4] a three-step analysis applies. See *Portis v. First National Bank of New*

---

[4]    "Direct evidence" in the employment discrimination context is "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995) (citing *Brown v. East Mississippi Electric Power Association*, 989 F.2d 858, 861 (5th Cir. 1993)).

*Albany, MS*, 34 F.3d 325, 328 (5th Cir. 1994); see also *St. Mary's*, 509 U.S. at

506-11; *Burdine*, 450 U.S. at 252-56; *McDonnell Douglas*, 411 U.S. at 802-05.  In the

first step, the plaintiff must establish a *prima facie* case of discrimination.  *Portis*, 34

F.3d at 328 n.7.  If the plaintiff presents a *prima facie* case, a presumption of

discrimination arises.  *St. Mary's*, 509 U.S. at 506.  At the second step, the defendant

can rebut this presumption of discrimination by offering a legitimate,

nondiscriminatory reason for the employment decision of which the plaintiff

complains.  *Id*. at 507.  If the defendant satisfies this burden of production, the

plaintiff's *prima facie* case dissolves, *id*., and the case proceeds to the third step of the

analysis.  *Id*.  At this third stage, the burden is on the plaintiff to prove that the

reasons offered by the defendant are pretexts for race discrimination.  *Id*. at 507-08.

When the analysis has proceeded to this third step, the plaintiff -- to avoid

summary judgment -- must produce evidence from which a reasonable factfinder

could find "that the employer's reasons were not the true reason for the employment

decision *and* that unlawful discrimination was."  *Bodenheimer v. PPG Industries, Inc.*, 5

F.3d 955, 957 (5th Cir. 1993) (emphasis in original).  Accord *Moore v. Eli Lilly and

Company*, 802 F. Supp. 1468, 1471-74 (N.D. Tex. 1992), *aff'd*, 990 F.2d 812, 816

n.24 (5th Cir.), *cert. denied*, 510 U.S. 976 (1993); *Waggoner v. City of Garland*, 987

F.2d 1160, 1166 (5th Cir. 1993).  See *St. Mary's*, 509 U.S. at 507-08.

a.  *Prima Facie* Case

- 9 -

To establish a *prima facie* case of race discrimination, Johnson must show (1) that he was a member of a protected group, African-American; (2) that he was qualified for his position; (3) that he was dismissed or suffered an adverse employment action; and (4) that the defendant sought to replace him with a similarly qualified white employee.  *E.g.*, *Ward v. Bechtel Corporation*, 102 F.3d 199, 202 (5th Cir. 1997).  That is, Johnson must prove that "an employee outside of his protected class received better treatment on circumstances nearly identical to his."  *Bowers v. Principi*, 70 Fed. Appx. 157, 2003 WL 21554567, at *1 (5th Cir. July 3, 2003) (per curiam) (citation omitted).  COC asserts that Johnson cannot establish a *prima facie* case of race discrimination.  Motion at 6-7.  For the purposes of this motion, the court will assume *arguendo* that Johnson can satisfy the first three elements of his *prima facie* case.  COC contends, however, that Johnson's *prima facie* case fails with respect to the fourth element.  Motion at 17-18.  COC focuses on Johnson's alleged failure to introduce evidence showing that he was *replaced by someone outside the protected class* or *replaced by someone younger*.  *Id*. at 18.  Rather, COC maintains, Johnson -- a 45-year-old African-American male -- was replaced by Gregory Hill ("Hill") -- a 41-year-old African-American male -- as a member of the set up crew.  *Id*. at 18; COC's Reply in Support of its Motion for Summary Judgment and Objections to Plaintiff's Evidence ("Reply") at 3.

The court will assume, however, for the purposes of this motion, that Johnson has established a *prima facie* case of race discrimination.  The question then becomes whether COC has offered a legitimate, nondiscriminatory reason for Johnson's discharge and whether Johnson can satisfy his pretext burden.

b.  Nondiscriminatory Reason

COC contends that it has established that Johnson was terminated for legitimate, non-discriminatory reasons.  Motion at 8.  To satisfy its burden of production, COC must merely produce evidence which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action about which the plaintiff complains.  See *St. Mary's*, 509 U.S. at 507, 509 (at this stage of analysis, credibility determinations are not warranted as burden-of-production determination necessarily precedes credibility assessment stage); see also *Dailey v. Johnson & Johnson Consumer Products, Inc.*, 850 F. Supp. 549, 553 n.2 (N.D. Tex. 1994) ("It is important to note that whether a defendant carries [its] burden of production involves no credibility assessment, '[f]or the burden-of-production determination necessarily *precedes* the credibility-assessment stage.'") (emphasis in original, quoting *St. Mary's*, 509 U.S. at 509), *aff'd*, 99 F.3d 1136 (5th Cir. 1996) (table); *Thornton v. Neiman Marcus*, 850 F. Supp. 538, 543 (N.D. Tex. 1994) ("The Court may not assess the credibility of the stated reason.").

- 11 -

COC has submitted evidence that termination of Johnson's employment was due to his theft of a box of t-shirts. Thus, COC has produced a sufficient nondiscriminatory reason for its termination of Johnson's employment. See *Wright v. Southwest Bank*, 648 F.2d 266, 267 (5th Cir. 1981). Accordingly, upon review of the motion, the response, and the evidence in the record, the court concludes that COC has carried its burden of articulating a legitimate, nondiscriminatory reason for terminating Johnson's employment.

c. Pretext Burden

When the analysis has proceeded to this third step, Johnson -- to avoid summary judgment -- must produce evidence from which a reasonable factfinder could find that COC's stated reason was not the true reason for the employment decision *and* that unlawful discrimination was. *Bodenheimer*, 5 F.3d at 957 (emphasis in original). Accord *Moore*, 802 F. Supp. at 1471-74; *Waggoner*, 987 F.2d at 1166; see *St. Mary's*, 509 U.S. at 515-16. To show pretext, a plaintiff must do more than negate the defendant's proffered reasons for the employment decision. See *Walton v. Bisco Industries, Inc.*, 119 F.3d 368, 371 (5th Cir. 1997).

In *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989 (5th Cir. 1996) (en banc), the Fifth Circuit set forth the following standard regarding proof of pretext:

> [A] jury issue will be presented and a plaintiff can avoid
> summary judgment . . . if the evidence taken as a whole
> (1) creates a fact issue as to whether each of the employer's
> stated reasons was what actually motivated the employer

and (2) creates a reasonable inference that [race] was a
determinative factor in the actions of which plaintiff
complains.  The employer, of course, will be entitled to
summary judgment if the evidence taken as a whole would
not allow a jury to infer that the actual reason for the
discharge was discriminatory.

*Id*. at 994; see also *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181-83 (5th

Cir. 1996) (quoting *Rhodes* standard and applying it in Title VII summary judgment

context).  "*Rhodes* makes clear that a plaintiff must present evidence sufficient to

create a reasonable inference of discriminatory intent in order to avoid summary

judgment." *Grimes v. Texas Department of Mental Health and Mental Retardation*, 102

F.3d 137, 141 (5th Cir. 1996); *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 450 (5th

Cir. 1996).

After reviewing Johnson's response to COC's motion for summary judgment,

the court concludes that he has failed to raise a genuine issue of material fact that

COC's reason for discharging him is a mere pretext for race discrimination.  Even if it

is assumed, *arguendo*, that Johnson has presented a *prima facie* case, his claim would

fail for want of evidence from which a reasonable jury could conclude that the

legitimate reasons offered by COC were pretexts for race discrimination.  Johnson

offers nothing to show that an impermissible racial animus motivated COC.[5]  Absent

---

[5]      Johnson argues that he was not "in any way involved in this theft,
therefore the reason for termination is clearly false, and therefore pretext for
discrimination."  Response at 20.  The issue, however, is not whether Johnson was
guilty of the theft but whether COC had a good faith belief that he was.  See *Jones v.*

(continued...)

such evidence, a verdict in favor of Johnson on his claims of race discrimination

would be insupportable as a matter of law.  See *Swanson v. General Services*

*Administration*, 110 F.3d 1180, 1185 (5th Cir.) (reversing and rendering a jury verdict

where the plaintiff offered no evidence connecting the defendant's actions to race),

*cert. denied*, 522 U.S. 948 (1997).

Johnson incorrectly asserts that the comment by Jordan that "all blacks have

sold something in their lifetime" supports a clear inference of discrimination.

Response at 5.  In keeping with the summary judgment standard, the court will

assume that the comment was made.  Still, it does not -- on its face -- evidence an

intent to discriminate on the basis of race.  The comment is -- at best -- no more than

a "stray remark," and "'stray remarks' alone will not overcome overwhelming evidence

---

[5](...continued)
*Flagship International*, 793 F.2d 714, 729 (5th Cir. 1986) ("Flagship need not have
been correct in its basis for suspending and discharging Jones to show that its actions
were motivated for non-retaliatory reasons . . . .  It is sufficient . . . that Flagship had
reasonable grounds, or in good faith though[t] it did, for its suspension and
termination of Jones' employment.") (internal quotation marks omitted), *cert. denied*,
479 U.S. 1065 (1987).  Johnson has the burden of showing that the stated reason for
his discharge, theft of the t-shirts, was not the true reason (in other words, that COC
did not believe him guilty of the theft) and that racial discrimination was.
*Bodenheimer*, 5 F.3d at 957.  See *Waggoner*, 987 F.2d at 1166 ("To the extent that
Waggoner's summary judgment evidence relates to his innocence of the sexual
harassment charge, it is irrelevant.  He must, instead, produce evidence
demonstrating that Hamilton or Phillips did not in good faith believe the allegations,
but relied on them in a bad faith pretext to discriminate against him *on the basis of his
age*.") (emphasis in original).  Johnson has failed to carry this burden of
demonstrating pretext.  Indeed, he admitted in his deposition that no one involved in
supervising or terminating him ever indicated any doubt that Johnson was guilty of
the theft.  Johnson Deposition 21:13-17, Appendix at 6.

corroborating defendant['s] non-discriminatory rationale." *Sreeram v. Louisiana State University Medical Center-Shreveport*, 188 F.3d 314, 320 (5th Cir. 1999); see also *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655-56 (5th Cir. 1996); *Waggoner*, 987 F.2d at 1166.

The Fifth Circuit has held that such remarks may be sufficient evidence of discrimination if the comments are "1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the termination[]; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Krystek v. University of Southern Mississippi*, 164 F.3d 251, 256 (5th Cir. 1999) (citations omitted).   In this case, Johnson has presented no evidence that the comment was proximate in time to Johnson's termination.   Nor has it been shown that the comment makes any reference to the employment decision at issue -- COC's decision to terminate Johnson's employment. Johnson has failed to demonstrate that the comment he ascribes to Jordan is evidence of pretext.   This is especially so "where, as here, the evidence overwhelmingly supports defendant['s] proffered non-discriminatory rationale." *Sreeram*, 188 F.3d at 320 (citing *Brown*, 82 F.3d at 656).

In sum, the most favorable view of the evidence suggests that Johnson was an African-American who suffered adverse employment actions, not that he suffered adverse employment actions *because* he was an African-American.   Even when viewed in a light most favorable to him, Johnson's summary judgment evidence fails to create

an issue of fact that his discharge was motivated by his race.  Because he will bear the

burden of proof at trial on these elements of his claim, this lack of evidence is fatal.

See *Celotex*, 477 U.S. at 322-23.  Accordingly, COC's motion for summary judgment

on Johnson's race discrimination claim is granted.

2.  *Retaliation*

As with Johnson's claims of discrete instances of race discrimination, the court

applies the *McDonnell Douglas/Burdine/St. Mary's* burden shifting framework to

Johnson's claims of retaliation.  See *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112,

1122 (5th Cir. 1998); *Long v. Eastfield College,* 88 F.3d 300, 304 (5th Cir. 1996).  To

establish a *prima facie* case of unlawful retaliation under Title VII, Johnson must

demonstrate that (1) he engaged in activity protected by Title VII; (2) an adverse

employment action occurred; and (3) a causal link existed between the protected

activity and the adverse employment action.  See *Webb v. Cardiothoracic Surgery

Associates of North Texas, P.A.*, 139 F.3d 532, 540 (5th Cir. 1998); *Sherrod*, 132 F.3d at

1122 n. 8; *Long*, 88 F.3d at 304; *Collins v. Baptist Memorial Geriatric Center*, 937 F.2d

190, 193 (5th Cir. 1991), *cert. denied*, 502 U.S. 1072 (1992).  The causal connection

required is cause-in-fact or "but for" causation.  *Jack v. Texaco Research Center*, 743 F.2d

1129, 1131 (5th Cir. 1984).

If it is assumed *arguendo* that Johnson has adduced sufficient evidence to

establish a *prima facie* case of retaliation, the court must next address COC's proffered

explanation and Johnson's ultimate proof.  See, *e.g.*, *Long*,  88 F.3d at 305.  COC explains Johnson's termination by pointing to evidence that Johnson stole company property.  To avoid summary judgment, Johnson must rebut this legitimate explanation by providing evidence from which a reasonable jury could conclude that unlawful retaliation was the "cause-in-fact" of his injury.  See *Sherrod*, 132 F.3d at 1123.

Upon review of the evidence, the court concludes that Johnson has failed to provide proof from which a reasonable jury could find that retaliation was the cause-in-fact[6] of his discharge.  Even if it is assumed *arguendo* that Johnson engaged in protected activity, he has submitted no evidence challenging COC's legitimate, nondiscriminatory reason for discharging him, *i.e.*, theft of company property.  Without such evidence showing that Johnson would not have been discharged "but-for" his complaints of discrimination, see *Sherrod*, 132 F.3d at 1122; *Long*, 88 F.3d at 305 n.4, COC is entitled to summary judgment on Johnson's retaliation claim.

Moreover, as COC argues, the scope of Johnson's administrative charges did not fairly encompass a claim of retaliation.  Reply at 3-4.  See *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465-67 (5th Cir. 1970) ( Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the

---

[6]        The "cause-in-fact" analysis of pretext requires proof of a significantly stronger relationship between the adverse employment action and the alleged retaliation than is required to show a "causal link" for the plaintiff's *prima facie* case. *Sherrod*, 132 F.3d at 1122 n. 8; *Long*, 88 F.3d at 305 n.4.

opportunity to attempt to obtain voluntary compliance); see also *Vuyanich v. Republic National Bank of Dallas*, 723 F.2d 1195, 1199 (5th Cir.) (plaintiff's claims should be limited to those contained in EEOC complaint), *cert. denied,* 469 U.S. 1073 (1984).

3. *Hostile Work Environment*

In addition to the discrete instances of discrimination, Johnson claims that he suffered pervasive harassment because of his race while he was an employee of COC. Response at 13; Complaint ¶ 6. Whether an environment is "abusive" or "hostile" depends on the totality of the circumstances. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23 (1993). Pertinent circumstances may include (1) the frequency of the conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Id*.

Johnson provides nothing beyond his own opinion in support of his claim that the harassment was racially motivated. *See* Johnson Deposition, *attached to* Appendix at 12. It is well settled that "[a]n employee's own subjective belief of race discrimination, however genuine, cannot serve as the basis for judicial relief." *Patton v. United Parcel Service, Inc.,* 910 F. Supp. 1250, 1263 (S.D. Tex. 1995) (citations omitted). Johnson relies solely on conclusions based upon inference drawn from his opinions. This "proof" is tantamount to no proof at all and will not preclude summary judgment in favor of COC. See *Douglass v. United Services Automobile*

- 18 -

*Association*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) (because conclusory

allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the

nonmovant's summary judgment burden, employee's subjective belief that he suffered

an adverse employment action as a result of discrimination, without more, is not

enough to survive a summary judgment motion).  Isolated incidents described by

Johnson, if true, are not so severe and pervasive as to create an objectively hostile or

abusive work environment, as required to obtain relief under Title VII.  See *Harris*,

510 U.S. at 21 ("Conduct that is not severe or pervasive enough to create an

objectively hostile or abusive work environment -- an environment that a reasonable

person would find hostile or abusive -- is beyond Title VII's purview").

### 4.  *Failure to Promote*

To make out a *prima facie* case of discriminatory failure to promote, Johnson

must show that (1) he belongs to a protected class, (2) he was qualified for the

position sought, (3) he did not receive the promotion, and (4) the position remained

open and was ultimately filled by someone outside the protected class.  See *St.*

*Mary's*, 509 U.S. at 506; *McDonnell Douglas*, 411 U.S. at 802; see also *Uviedo v. Steves*

*Sash Door Company*, 738 F.2d 1425, 1428 (5th Cir. 1984), *cert. denied*, 474 U.S. 1054

(1986).  Here, Johnson failed to present evidence that he was qualified for a position

he sought, that he failed to receive the promotion, and that the job he sought was

filled by someone outside the protected class.  Therefore, Johnson cannot establish a

*prima facie* case, and summary judgment in favor of COC is proper. *Celotex*, 477 U.S. at 322-23. Moreover, the scope of Johnson's administrative charges did not fairly encompass a claim of failure to promote. See *Sanchez*, 431 F.2d at 465-67; see also *Vuyanich*, 723 F.2d at 1199.

### C. Age Discrimination

The ADEA prohibits employers from discharging employees based upon their age. 20 U.S.C. § 623(a)(1). To establish a violation of the ADEA, Johnson must prove intentional discrimination. See *Armendariz v. Pinkerton Tobacco Company*, 58 F.3d 144, 149 (5th Cir. 1995), *cert. denied*, 516 U.S. 1047 (1996). The multi-step *McDonnell Douglas* burden-shifting framework applied to Title VII claims also applies to ADEA claims. *Roberson v. Alltel Information Services*, 373 F.3d 647, 651 (5th Cir. 2004). However, a fourth step is added to the ADEA framework. Thus, in the first step, Johnson must establish a *prima facie* case of discrimination by showing that he was (1) discharged; (2) qualified for the position; (3) within the protected class; and (4) either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age. *Armendariz*, 58 F.3d at 149.

COC asserts that Johnson cannot establish a *prima facie* case of age discrimination. Motion at 6. For the purposes of this motion, the court will assume *arguendo* that Johnson can satisfy the first three elements of his *prima facie* case. COC

contends, however, that Johnson's *prima facie* case fails with respect to the fourth element.  Motion at 17-18.  COC focuses on Johnson's alleged failure to introduce evidence to show that he was *replaced by someone outside the protected class* or *replaced by someone younger*.  *Id*. at 18.  Rather, COC maintains, Johnson, a 45-year-old African-American male, was replaced by Hill, a 41-year-old African-American male.  *Id*. at 18; Reply at 3.  Accordingly, because Johnson has produced no evidence demonstrating that COC's explanation for terminating his employment was probably a pretext for age discrimination, Johnson's age discrimination claim must fail.  See *Celotex*, 477 U.S. at 323 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

## III.  CONCLUSION

For the foregoing reasons, COC's motion for summary judgment is **GRANTED.**  Judgment will be entered for the defendant.

**SO ORDERED**.

April 19, 2005.

_A. Joe Fish_

A. JOE FISH
CHIEF JUDGE